UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RUTH E. MANGUM,

                                     Plaintiff,

          v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                                     Defendant.

Case No. 3:10-cv-05099-KLS

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS

Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the

parties have consented to have this matter heard by the undersigned Magistrate Judge.  After

reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons

set forth below, defendant's decision to deny benefits should be reversed and remanded for

further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On May 3, 2005, plaintiff filed applications for disability insurance and SSI benefits,

alleging disability as of April 12, 2005, due to a ruptured disc and blackouts. See Tr. 13, 109.

Her applications were denied upon initial review and on reconsideration. See Tr. 13, 74, 79, 81.

ORDER - 1

A hearing was held before an administrative law judge ("ALJ") on April 14, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. See Tr. 23-67.

On July 7, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 13-22.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 18, 2009, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981, § 416.1481.  On February 10, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See (ECF #1-#3).  The administrative record was filed with the Court on April 27, 2010. See (ECF #9).  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues that defendant's decision should be reversed and that this matter should be remanded for an outright award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in not finding all of her impairments to be severe; (2) in evaluating the medical evidence in the record; (3) in assessing her credibility; (4) in assessing her residual functional capacity; and (5) in finding her capable of performing other jobs existing in significant numbers in the national economy.  The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to

ORDER - 2

support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See

Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F.

Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational

interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577,

579 (9th Cir. 1984).

I.      The ALJ's Step Two Determination

At step two of the sequential disability evaluation process,[1] the ALJ must determine if an

impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it

does not "significantly limit" a claimant's mental or physical abilities to do basic work activities.

20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling

("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes

necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856

*3.

An impairment is not severe only if the evidence establishes a slight abnormality that has

"no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL

56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their

symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

ORDER - 3

1152, 1159-60 (9th Cir. 2001); see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The

step two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims.

See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had severe impairments consisting of lumbar disc

disease, a pain disorder, and a vertiginous syndrome.  See Tr. 15.  Plaintiff argues the ALJ erred

in not also finding her depression, knee impairment and cognitive disorder to be severe as well.

The undersigned agrees.

A.    Knee Impairment

In regard to plaintiff's knee impairment, the ALJ stated she had "undergone arthroscopic

surgery on both knees, with no further indication of difficulties." Tr. 16.  The record, however,

indicates otherwise.  In early November 2007, plaintiff reported her left knee had "really gotten a

lot worse" one and a half years after having had arthroscopic surgery on her right knee. Tr. 359.

X-rays showed moderate degenerative changes in her left knee, and it was thought that she might

have a meniscus tear.  See Tr. 361.  Although an MRI performed on that knee in mid-Novmeber

2007, was "somewhat confusing," it showed "evidence of an abnormality," plaintiff was noted to

be "still very tender over the medial joint line" and to have pain on testing, and it was "certainly"

felt that the "abnormality" represented "a tear." Tr. 362.

Defendant points out that plaintiff had surgery on the left knee in early 2008 (see Tr. 33-

34, 366), but there is no indication in the record that this surgery was successful in resolving all

of plaintiff's problems with that knee.  While this does not necessarily mean the record supports

a finding of significant work-related limitations – i.e., severity – stemming from this impairment,

it does show the reasons the ALJ set forth in his discussion of this issue were not sufficient.  As

such, remand for further consideration thereof is warranted.

ORDER - 4

B.    Depression

The ALJ found in regard to plaintiff's depression that it was "treated with antidepressant medication," and that she was "not receiving regular counseling or psychotherapy." Tr. 16.  But while the fact that plaintiff might not be receiving regular counseling or psychotherapy may bear on her credibility and whether her depression ultimately rises to a disabling level, it does not by itself necessarily indicate non-severity.  Nor does the record definitively show the medication plaintiff has been taking actually "treated" her depression.  For example, in early October 2005, Richard M. Agosto, Ph.D., an examining psychologist, diagnosed her with a depressive disorder, and assessed her with a current global assessment of functioning ("GAF") score of 52 it appears based at least in part on that diagnosis. See Tr. 230.

A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF [score] of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 34).

Dr. Agosto went on to opine that plaintiff's depression could "be magnifying the degree of suffering she [was] experiencing from [her] physical difficulties." Tr. 231.  Linda Conaway, Ph.D., performed a neuropsychological evaluation in early August 2006, in which she diagnosed plaintiff with a dysthymic disorder, and a current GAF score of 55 also it seems based at least in

ORDER - 5

1  part on that diagnosis. See Tr. 337.  In late August, 2007, plaintiff was voluntarily hospitalized

2  for both depression and suicidal ideation. See Tr. 346.  On admission, she was diagnosed with a

3  recurrent, severe, major depressive disorder, and was assessed with a GAF score of 40. See Tr.

4  348; White v. Commissioner of Social Sec., 572 F.3d 272, 276 (6th Cir. 2009 ("A GAF score of

5  31-40 indicates some impairment in reality testing or communication (e.g., speech is at times

6  illogical, obscure, or irrelevant) or major impairment in several areas such as work or school,

7  family relations, judgment, thinking or mood.") (quoting Edwards v. Barnhart, 383 F.Supp.2d

8  920, 924 n. 1 (E.D.Mich. 2005)).  Upon discharge, she was given the same diagnosis, along with

9

10 a GAF score of 60. See Tr. 338.

11        While there is some indication from plaintiff's primary care physician's treatment notes

12 that her depression has improved at times, such improvement does not seem to consistently have

13 been the case. See Tr. 183, 243, 247, 250, 253, 260, 269, 277, 368, 372, 377-78, 382-83, 425,

14 436, 440, 447, 453.  In any event, nothing in the ALJ's decision indicates that he compared those

15 treatment notes with the findings and opinions from both Dr. Agosto and Dr. Conaway discussed

16 above, or that he otherwise properly analyzed all of the medical evidence in the record regarding

17 plaintiff's depression at step two.  Defendant counters that Lawrence Duckler, M.D., the medical

18 expert who testified at the hearing, found the mental functional limitations resulting from

19 plaintiff's depression were mild.  But the portion of Dr. Duckler's testimony defendant points to

20 is merely a short summarization of the medical evidence in the record. See Tr. 54.  Nowhere in

21 his testimony does Dr. Duckler actually find plaintiff had only mild mental limitations.  Remand,

22

23 therefore, for further consideration of this issue is appropriate as well.

24

25        C.     Cognitive Disorder

26        The ALJ addressed plaintiff's cognitive disorder as follows:

ORDER - 6

> . . . As for her cognitive disorder, she has had mixed results with formal
> testing, but her presentation and activities of daily living do not support a
> significant deficit.  More likely, her cognitive and memory deficits are a result
> of her complex medical regimen – prescribed by her primary care physician –
> which has not been formally evaluated by a psychiatrist or pain management
> specialist.

Tr. 16.  Plaintiff argues, and the Court agrees, that the ALJ was insufficiently specific in stating that her presentation and daily activities failed to support a significant cognitive deficit, given that there is no citation to or discussion of the relevant record here.  In addition, as discussed in greater detail below in regard to the ALJ's assessment of plaintiff's credibility, the record fails to necessarily show she has engaged in activities of daily living at a level that is indicative of one who is not disabled or who has only minimal work-related limitations.  Nor does the ALJ explain what aspect of plaintiff's "presentation" supports his findings here.

The medical evidence in the record, furthermore, fails to definitively establish plaintiff's cognitive disorder is necessarily the result of her "complex medical regimen," or that even if it is to one extent or another, that it should be found to be non-severe as a result thereof.  In early July 2005,  while it was noted that the "narcotics" plaintiff took "could potentially have [an] influence on [her] memory as could other medications," it was noted as well that "[c]learly" she had "a long history of psychiatric issues which could be having a profound influence upon her cognitive functioning." Tr. 245.   It is true that Dr. Agosto opined that there did "not seem to be any true cognitive difficulties that would interfere her memory and recall." Tr. 230.  But Dr. Agosto also opined as follows:

> . . . However, it is necessary to more completely evaluate the effects of the
> multiple and complex combinations of medications she is taking and their
> effects on her cognition.  Related to this, it would be appropriate to have her
> referred to a psychiatrist to consider all of the psychotropic medications she is
> taking, along with the pain medications and other confounding drugs.

Id.  Given that Dr. Agosto assessed plaintiff with a current GAF score of 52 due in part to mental

ORDER - 7

retardation, personality disorders, a chronic pain disorder with both psychological factors and a general medical condition, and, as discussed above, a depressive disorder, and that, as just noted, Dr. Agosto felt that further evaluation of plaintiff's situation was needed, it is not at all clear that he deemed plaintiff to have no cognitive deficits or only minimal ones. See id.

Also as discussed above, Dr. Conaway assessed plaintiff with a GAF score of 55 due not only in part to a dysthymic disorder, a personality disorder, and a pain disorder associated with psychological factors and a general medical condition, but also to a cognitive disorder. See Tr. 337. Although "structured testing" revealed plaintiff's memory mostly to be "average to above average," and she showed only "some mild problems with attention," it seemed "most likely" that her "cognitive difficulties relate[d] to her current medication regime and perhaps her history of a prior overdose." Tr. 336. Thus, here too, Dr. Conaway seems to have felt she was suffering from some more than minimal cognitive issues, whether or not they were due to the medication she was taking or to some other cause, such as her cognitive disorder.

The record contains a letter from Dale B. Mortimer, M.D., dated September 13, 2007, addressed to plaintiff's primary care physician, in which Dr. Mortimer states his "hunch" was "that one or more of her medications is causing cognitive side effects, problems with short term memory, and inattention," and that it would "take some time to sort this out." Tr. 374. Then in late September 2007, Dr. Mortimer issued a written report after plaintiff had cancelled a follow-up appointment with him, in which he stated that if she were to return to complete the evaluation, his "top priority would be to sort out why [she] is currently so cognitively impaired." Tr. 358. It is thus clear that while these medical sources do not necessarily agree on the causes of plaintiff's cognitive difficulties, they do believe she has them, and for the most part have indicated that they have had a more than minimal effect on her ability to function. Nor does the ALJ – or defendant

ORDER - 8

for that matter – explain why a severe cognitive impairment cannot be caused by the medications plaintiff has been prescribed, given that there is no indication yet in the record that she is able to stop taking them, or that doing so would cause her to improve her functioning.  These issues too thus need to be addressed on remand.

II.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility."  Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."  Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Id.  The ALJ also may draw inferences "logically flowing from the evidence."  Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion."  Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.      Dr. Agosto and Dr. Conaway

Plaintiff argues that although the ALJ acknowledged that Dr. Agosto assessed her with a GAF score of 52, and that Dr. Conaway assessed her with a GAF score of 55 – which the ALJ further acknowledged denoted "moderate symptoms resulting in moderate limitations in social and occupational functioning" (Tr. 19) – he gave no reasons for failing to adopt such limitations. The undersigned agrees the ALJ erred in failing to do so.  Defendant argues that because the ALJ

properly determined plaintiff to be not credible, and because a GAF score reflects the severity of a claimant's symptoms based on the claimant's description thereof, the ALJ appropriately did not account for the above GAF scores.

The ALJ, however, did not state this as a reason for rejecting those GAF scores. As such, the Court finds this to be an improper *post hoc* rationale. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss). In addition, as discussed below, the ALJ failed to provide sufficient reasons for discounting plaintiff's credibility. Accordingly, the Court declines to draw from the ALJ's silence regarding the reasons he chose not to adopt the moderate limitations that are reflected in the GAF scores Drs. Agosto and Conaway assessed, any inference other than what appears to be an error of omission on the part of the ALJ.

B.    Dr. Mortimer

Plaintiff further argues the ALJ erred in failing to properly evaluate Dr. Mortimer's late November 2007 evaluation report. The ALJ did not specifically address that report, but instead noted that Dr. Mortimer "opined [in the September 13, 2007 letter he wrote] that the side effects of her regimen of eleven psychoactive medications was a likely cause for her mood instability and episodes of altered consciousness, and recommended she undergo a complete psychiatric evaluation to sort out her medication issues." Tr. 20. As plaintiff points out, however, in his late November 2007 evaluation report, Dr. Mortimer stated that further evaluation would be needed "to sort out why [she was] so cognitively impaired." Tr. 358. But even if just the September 13, 2007 letter is considered, it still shows plaintiff was experiencing significant cognitive problems, and, as discussed above, there is no indication yet in the record that plaintiff does not need all of those medications she was taking for her other problems.

ORDER - 11

Defendant argues the ALJ was not required to credit any of Dr. Mortimer's findings and opinions from his incomplete evaluation, as it does not constitute significant probative evidence. Defendant's argument, however, fails for two reasons. First, it is significant probative evidence because it does indicate plaintiff is experiencing more than minimal cognitive difficulties, even though the exact cause thereof may not yet be completely known. Second, the incompleteness that defendant notes – i.e., the exact cause of plaintiff's cognitive problems and the best way, if at all possible, to solve them – should have put the ALJ on notice that further development of the record was needed. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record triggered when there is ambiguous evidence or when record is inadequate to allow for proper evaluation thereof).

C.     Dr. Santiano

The ALJ found in relevant part as follows:

> . . . Rene B. Santiano, M.D., opined on October 11, 2004, that the claimant could lift a maximum of ten pounds occasionally, sit for three to six hours, stand for up to two hours and walk for six to eight hours, provided she gets a 10 to 15 minute break every two to three hours. Furthermore, he opined she should not bend, kneel, squat or crawl and was limited to only occasional overhead work. This reflects the claimant's residual functional capacity with her chronic back pain, which did not change significantly after her alleged onset date. Dr. Santiano did not explain how he came to the conclusions he did, but they are somewhat reasonable and can be given moderate weight. . . .

Tr. 19. Plaintiff argues the ALJ erred in so finding here, noting that Dr. Duckler testified that her back impairment was progressive and that her pain at that time was consistent therewith, thereby indicating her limitations are more restrictive now than they were in 2004. It is true Dr. Duckler testified that as plaintiff "gets older, very likely" her degenerative joint disease symptoms would "continue to progress." Tr. 55. But this is a far cry from Dr. Duckler actually testifying that her symptoms have in fact progressed or progressed to the point that they have resulted in greater

physical functional limitations than Dr. Santiano found in 2004. Dr. Duckler, though, did not so

testify, nor has plaintiff pointed to other medical evidence indicating the same.

Plaintiff goes on to argue the ALJ's statement that Dr. Santiano's 2004 conclusions were

"somewhat reasonable" and thus could be given "moderate weight," is not the same as a finding

that they are supported by substantial evidence as the Social Security regulations require. But as

noted above, substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. See Richardson, 402 U.S. at 401; see also Fife, 767 F.2d at

1429 (more scintilla but less than preponderance); Allen, 749 F.2d at 579 (if evidence admits of

more than one rational interpretation, court must uphold defendant's decision). Although the

terms used by the ALJ are somewhat amorphous, as discussed above plaintiff has failed to show

the substantial evidence in the record does not support the ALJ in finding that the conclusions of

Dr. Santanio reflects her actual physical functional capabilities overall.

D.     State Agency Physicians

Plaintiff also challenges the following findings made by the ALJ:

A medical consultant examined the record . . . on November 16, 2005,
concluding that the claimant retained the residual functional capacity to lift
and carry ten pounds occasionally and frequently. Furthermore, the claimant
could sit for up to six hours and stand or walk for at least two hours during an
eight-hour day. The medical consultant also concluded that the claimant
should not use ladders, ropes or scaffolds, and was limited to only occasional
stooping, kneeling, crouching and crawling. Finally, the medical consultant
concluded that the claimant should avoid concentrated exposure to vibrating
machinery and hazardous conditions. A second . . . medical consultant
reviewed these opinions on December 8, 2005, and concluded the claimant
could lift and carry twenty pounds occasionally and stand and walk for up to
six hours during an eight-hour work day.

Tr. 20. Plaintiff argues the ALJ erred by failing to specifically cite the record, but clearly what is

being referred to here by the ALJ is the evaluation report completed by Dave Lindemeier, a non-

physician, on November 16, 2005, and affirmed by Jeffrey Merrill, M.D., on March 1, 2006. See

ORDER - 13

Tr. 300-07, 314. [2]  Thus, the undersigned finds no error was committed.  In addition, while it is true as just noted that the evaluation report was completed by a non-physician, it was affirmed by a reviewing physician, and thus was properly viewed by the ALJ as such.  As such, plaintiff fails to show the ALJ erred specifically with respect to this medical evidence.

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The

---

[2] It appears this is the actual date Dr. Merrill reviewed and/or signed off on Mr. Lindemeier's assessment. See id.

ORDER - 14

ALJ also may consider a claimant's work record and observations of physicians and other third

parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part because the treatment plaintiff received

"has been essentially routine and/or conservative in nature, and has been generally successful in

controlling her pain – even though she has experienced significant side effects." Tr. 18.  The ALJ

went on to state, however, that there was "strong reason to believe" those side effects could "be

eliminated, or at least significantly mitigated, through competent pain management," but instead,

plaintiff continued "to rely on her primary care physician – a family practice specialist – for all

her pain medications." Id. at n. 2.

In discounting credibility, an ALJ may consider the fact that only conservative treatment

has been received or prescribed. See Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ

properly considered both physician's failure to prescribe and claimant's failure to request serious

medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434

(9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to

be suggestive of lower level of pain and functional limitation).  The undersigned, though, agrees

with plaintiff that there does not appear to be anything necessarily "conservative" about the type

and amount of medications plaintiff has received so far, given, as discussed above, the serious

mental health side effects several of the medical sources in the record feel she is suffering from

at least in part as a result of those medications.  Nor does the record actually show that those side

effects would be reduced or eliminated through "competent pain management," though certainly

more effective management has been suggested.

The ALJ also discounted plaintiff's credibility in part because the record showed she had

"often failed to comply with the medical regimen prescribed by her treating doctors," suggesting

ORDER - 15

1    "that her symptoms may not have been as serious as has been alleged." Tr. 18.  Failure to assert a

2    good reason for not following a prescribed course of treatment "can cast doubt on the sincerity of

3    the claimant's pain testimony." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).  Plaintiff states

4    she has been compliant with the treatment recommended for her, whereas defendant counters the

5    evidence in the record shows otherwise.  For example, despite the recommendation in July 2005,

6    by one examining physician that she be tested by a neuropsychologist (<u>see</u> Tr. 245), defendant

7    points out that three months later plaintiff still had not obtained one, because she had obtained a

8    "similar evaluation" set up by the state – the one performed by Dr. Agosto incidentally – for the

9    purpose of determining disability (<u>see</u> Tr. 242). <u>See</u> <u>also</u> Tr. 441, 455 (noting plaintiff ended up

10   not going to neuropsychiatric evaluation since Dr. Agosto's appointment "would achieve the

11   same goal").  But it seems entirely reasonable for plaintiff to decide not to get, and presumably

12   pay for, essentially the same type of evaluation, particularly given her financial circumstances.

13   <u>See</u> <u>Fair</u>, 885 F.2d at 603 (determination proffered reason for not following prescribed course of

14   treatment is <u>not believable</u> can cast doubt on claimant's credibility).

15          Defendant also notes the fact that plaintiff did not pursue Dr. Agosto's recommendation

16   in October 2005, that she seek mental health counseling and see a psychiatrist for evaluation of

17   her medications. <u>See</u> Tr. 230-31.  But again there is evidence in the record that she may not have

18   done so for legitimate reasons.  For example, in late August 2007, plaintiff stated that she could

19   not pursue psychotherapy because she was "living in a remote area and [had] no transportation."

20   Tr. 349.  While it is not entirely clear this was the reason plaintiff did not pursue the courses of

21   action recommended by Dr. Agosto (<u>see, e.g.,</u> Tr. 376, 382-83; <u>but</u> <u>see</u> Tr. 370 (reporting could

22   not keep her follow-up appointment with Dr. Mortimer "due to financial issues"), 372 (agreed to

23   follow through with psychiatry appointment "as soon as financially capable")), it is clear the ALJ

did not address whether she in fact had valid reasons for not doing so.  This applies equally to the assertion by defendant that plaintiff failed as well to follow the recommendation of Dr. Conaway that she be "referred to an interventional pain specialist." Tr. 336.

Citing to <u>Warre v. Commissioner of Social Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006), defendant argues the Ninth Circuit has found that difficult economic circumstances do not validate a claimant's failure to pursue treatment.  The actual finding of the Ninth Circuit in that case, however, was that "the difficult economic circumstance" of the family of the child claimant did not "preclude a finding that he was <u>no longer disabled</u>." <u>Id.</u> (emphasis added).  But the actual issue here is whether the ALJ provided valid reasons for discounting plaintiff's <u>credibility</u>.  As defendant himself admits, in regard to that issue the Ninth Circuit <u>has</u> held that it is improper to discount credibility on the basis of failure to pursue treatment, when the claimant "has a good reason for not" doing so, such as lack of insurance coverage. <u>Carmickle v. Commissioner, Social Sec. Admin.</u>, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ next discounted plaintiff's credibility in part for the following reasons:

> In addition, although the claimant has described daily activities which are fairly limited, three factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled.  First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.  Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Finally, the record reflects that the claimant has reported daily activities including: caring for herself without assistance, caring for a pet, performing light household chores, walking, shopping in stores, managing her finances, reading, watching movies and television, painting ceramics, crocheting, embroidering and socializing with friends and relatives.  The undersigned finds the claimant's activities of daily living consumed a substantial part of her day, and are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

ORDER - 17

Tr. 18-19 (noting as well in footnote that although inability to manage checkbook was claimed, plaintiff reported to consultative psychological examiner that she could do so).  Plaintiff argues the activities of daily living the ALJ cites are sporadic, and thus do not undermine her credibility. The undersigned agrees.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be rejected, however, if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  But the claimant need not be "utterly incapacitated" to be eligible to receive disability benefits, and "many home activities may not be easily transferable to a work environment." Id.  The record as it currently stands fails to definitively show the activities plaintiff has reported engaging in rise to the level required by Smolen. See Tr. 41-44, 120-24, 145, 228-29, 334; but see Tr. 229 (reporting she can sit and paint ceramics "for about two hours at a stretch, if she has a 'good chair,'" and pay attention watching television for same amount of time "without difficulties").  In other words, although some of the activities the ALJ identified, such as painting ceramics and watching television reveal a level of activity seemingly at odds with plaintiff's alleged disability, such is not clearly the case with the others.  Rather, further consideration of plaintiff's activities is required.

As noted above, the ALJ did not err in finding the medical evidence in the record was not consistent with plaintiff's allegation of a disabling back impairment. See Tr. 19.  A finding that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  However, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748,

ORDER - 18

1   749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (*en*

2   *banc*)) (emphasis added); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair,

3   885 F.2d at 601 (9th Cir. 1989).  Since the other reasons the ALJ gave for discounting plaintiff's

4   credibility cannot stand, this last valid reason is not sufficient to support the ALJ's overall

5   credibility determination.  Thus, the undersigned finds the ALJ did err in discounting plaintiff's

6   credibility in this case.  Because questions remain regarding whether there is substantial evidence

7   to support one or more of those other stated reasons, however, remand for further reconsideration

8   
9   of plaintiff's credibility is warranted here.

10  IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

11          If a disability determination "cannot be made on the basis of medical factors alone at step

12  three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

13  restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p,

14  1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at

15  step four to determine whether he or she can do his or her past relevant work, and at step five to

16  
17  determine whether he or she can do other work. See id.  It thus is what the claimant "can still do

18  despite his or her limitations." Id.

19          A claimant's residual functional capacity is the maximum amount of work the claimant is

20  able to perform based on all of the relevant evidence in the record. See id.  However, an inability

21  to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ

22  
23  must consider only those limitations and restrictions "attributable to medically determinable

24  impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

25  claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

26  accepted as consistent with the medical or other evidence." Id. at *7.

ORDER - 19

Here, the ALJ assessed plaintiff with the following residual functional capacity:

**. . . [T]he claimant has the residual functional capacity to lift and carry ten pounds occasionally and ten pounds frequently.  During an eight-hour day, she can sit, stand and walk for up to six hours total provided that she is allowed to stand and/or walk for thirty minutes after sitting for an hour.  Furthermore, she should not use ladders, ropes or scaffolds, and is limited to only occasional stooping, kneeling, crouching and crawling.  Finally, the claimant should avoid concentrated exposure to vibrating machinery and hazardous conditions.**

Tr. 16-17 (emphasis in original).  Plaintiff argues the ALJ failed to consider all of her diagnosed impairments and the limitations identified by her physicians.  The Court agrees that due to the errors the ALJ committed in evaluating the medical evidence in the record discussed above in regard to her mental impairments, it is not at all clear the RFC with which he assessed plaintiff is entirely accurate.  Plaintiff also argues the ALJ erred in not including any limitations stemming from her vertigo, depression, anxiety, personality disorder, and pain disorder.  To the extent any such limitations are related to the medical evidence in the record concerning plaintiff's mental impairments, again because of the ALJ's errors in evaluating that evidence, remand for further consideration of those impairments and limitations is warranted.

The undersigned further agrees with plaintiff that for the same reasons remand is proper to further consider the side effects of plaintiff's medications, including particularly the cognitive difficulties they appear to have caused at least in part.  See Erickson v. Shalala, 9 F.3d 813, 818-19 (9th Cir. 1993) (ALJ must consider all factors that may have significant impact on claimant's ability to work, including side effects of medications).  The Court agrees as well that given the questions several of the examining and treating medical sources in the record had concerning the effects plaintiff's medications were having on her cognitive functioning, further development of the medical evidence in the record may be appropriate.  Accordingly, on remand the propriety of doing so shall be addressed by defendant.

ORDER - 20

Lastly, plaintiff argues that because the ALJ stated in his decision that she was capable of sitting, standing and walking for a total of six hours in an eight-hour workday, it appears that she would not be able to perform full-time work based on this limitation. See SSR 96-8p, 1996 WL 374184 *2 (RFC ordinarily encompasses ability to perform sustained work activities on regular and continuing basis, meaning eight-hour day, five days per week, or equivalent work schedule). That is, it seems as though the ALJ has limited plaintiff to performing those activities for a total of only six hours combined in a day, and not for a period of six hours of sitting and two hours of standing or walking as found by Dr. Merrill, and on which, as discussed above, the ALJ seemed to rely for the most part in assessing plaintiff with the above RFC.  This ambiguity thus requires clearing up on remand as well.

V.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

1   claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

2   (citations omitted).  The ALJ, however, may omit from that description those limitations he or

3   she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

4       At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

5   substantially the same limitations as those that were included in the ALJ's RFC assessment. See

6   Tr. 59-61.  In response to that question, the vocational expert testified that an individual with

7   those limitations – and who had the same age, education and vocational background as plaintiff –

8   would be able to perform other jobs. See Tr. 61-62.  Based on the vocational expert's testimony,

9

10  the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in

11  the national economy. See Tr. 21.

12      Plaintiff argues the hypothetical question the ALJ posed to the vocational expert did not

13  reflect an accurate residual functional capacity.  In light of the ALJ's errors in evaluating the

14  medical evidence in the record and in assessing plaintiff's credibility, the Court once more finds

15  it is not at all clear the hypothetical question the ALJ posed accurately described all of plaintiff's

16  functional limitations.  Plaintiff further argues that because the ALJ described the jobs he found

17

18  that she could do as requiring the ability to perform light work, and because the ALJ limited her

19  to lifting only 10 pounds both occasionally and frequently, she would be unable to perform those

20  jobs.  It is unclear whether plaintiff would be so precluded, however, as light work is defined as

21  involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

22  weighing up to 10 pounds." 20 C.F.R. § 404.1567(b) (emphasis added).  Nevertheless, there is at

23  least a question here of whether such a limitation would preclude plaintiff from performing either

24  of the jobs she was found to be capable of performing, again requiring remand.

25

26      Finally, plaintiff argues that she should be found incapable of performing any other jobs,

ORDER - 22

1    because the vocational expert testified that if an individual experiences grogginess due to a side

2    effect of his or her medications, and thus needs to sleep or nap during the day, then competitive

3    employment would be precluded. See Tr. 62-63.  But, again, it is not at all clear from the medical

4    evidence in the record that such a limitation is supported.  The Court, therefore, declines to find

5    any error on the part of the ALJ on this basis at this time.

6    VI.    This Matter Should Be Remanded for Further Administrative Proceedings

7            The Court may remand this case "either for additional evidence and findings or to award

8    benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

9    proper course, except in rare circumstances, is to remand to the agency for additional

10    investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

11    omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

12    unable to perform gainful employment in the national economy," that "remand for an immediate

13    award of benefits is appropriate." Id.

14            Benefits may be awarded where "the record has been fully developed" and "further

15    administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

16    v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

17    where:

18            (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
        claimant's] evidence, (2) there are no outstanding issues that must be resolved
19        before a determination of disability can be made, and (3) it is clear from the
        record that the ALJ would be required to find the claimant disabled were such
20        evidence credited.

21    Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

22    Because issues still remain in regard to the medical evidence in the record concerning plaintiff's

23    mental impairments and limitations, her credibility, her residual functional capacity, and her

ORDER - 23

1   ability to perform other jobs existing in significant numbers in the national economy, remand for

2   further administrative proceedings to resolve those issues is warranted.

3        Plaintiff argues that given the ALJ's errors in discounting her credibility, her testimony

4   should be credited as true.  It is true the Ninth Circuit has held that remand for an award of

5   benefits is required where the ALJ's reasons for discounting the claimant's credibility are not

6   legally sufficient, and "it is clear from the record that the ALJ would be required to determine the

7   claimant disabled if he had credited the claimant's testimony." Connett, 340 F.3d at 875.  The

8   Ninth Circuit went on to state, however, that it was "not convinced" the "crediting as true" rule

9   was mandatory. Id.  Thus, at least, such as here, where findings are insufficient as to whether a

10  claimant's testimony should be "credited as true," it seems the courts "have some flexibility in

11  applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (applying

12  credit as true rule, but noting its contrary holding in Connett).[15]

13       Plaintiff argues the medical opinion source evidence the ALJ erred in evaluating should

14  be credited as true as well.  It also is true that where the ALJ has failed "to provide adequate

15  reasons for rejecting the opinion of a treating or examining physician," that opinion generally is

16  credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted).  Again, though, as in this

17  case, where the ALJ is not required to find the claimant disabled on crediting of evidence, this

18  constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be met.

19  Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003).  In addition, "[i]n cases [like this one,]

---

[15]In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. Benecke, 379 F.3d at 594.  The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id.  It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.

ORDER - 24

where the vocational expert has failed to [fully] address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." <u>Bunnell</u>, 336 F.3d at 1116.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled, and hereby reverse the ALJ's decision and remands this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

DATED this 4th day of February, 2011.


Karen L. Strombom
United States Magistrate Judge

ORDER - 25